UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ANGELA HERRING,

        Plaintiff,

v.                                 CASE NO. 3:16-cv-1470-J-MCR

ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION,

        Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative

decision denying her application for a period of disability and disability insurance

benefits ("DIB"). Plaintiff alleges she became disabled on November 1, 2012.

(Tr. 177.) A hearing was held before the assigned Administrative Law Judge

("ALJ") on June 4, 2015, at which Plaintiff was represented by an attorney. (Tr.

53-83.) The ALJ found Plaintiff not disabled from November 1, 2012 through

June 29, 2015, the date of the decision.[2] (Tr. 15-27.)

In reaching the decision, the ALJ found that Plaintiff had "the following

severe impairments: disorders of the spine; anxiety disorder;

fibromyalgia/inflammatory arthritis; osteoarthritis; migraine headaches; disorders

_____

[1] The parties consented to the exercise of jurisdiction by a United States
Magistrate Judge. (Docs. 12, 14.)

[2] Plaintiff had to establish disability on or before September 30, 2017, her date
last insured, in order to be entitled to a period of disability and DIB. (Tr. 15.)

of the left shoulder; neuropathy; and carpal tunnel syndrome [status post] left-sided surgical release." (Tr. 17.) The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 19-20.) Then, after finding that Plaintiff was unable to perform her past relevant work, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy. (Tr. 25-26.)

Plaintiff is appealing the Commissioner's decision that she was not disabled from November 1, 2012 through June 29, 2015. Plaintiff has exhausted her available administrative remedies and the case is properly before the Court. The Court has reviewed the record, the briefs, and the applicable law. For the reasons stated herein, the Commissioner's decision is **AFFIRMED**.

## I.    Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary

result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion[3]

### A.    The ALJ Properly Evaluated Dr. Rocha's Opinions

Plaintiff's first argument is that the ALJ's RFC finding is deficient as a matter of law because it does not accurately describe all of Plaintiff's impairments and limitations. Specifically, Plaintiff argues that the ALJ failed to consider the seven consistent opinions of her treating physician, Lily Rocha, M.D., regarding her work-related limitations, which were issued on February 22, 2013, May 27, 2013, June 21, 2013, July 19, 2013 (three separate opinions), and September 16, 2013. Plaintiff points out that each of Dr. Rocha's opinions establishes that Plaintiff is unable to sit, stand, and walk, in combination, for the duration of an eight-hour workday due to her physical impairments, that she is limited to no

---

[3] Plaintiff raises two issues on appeal, which the Court addresses in reverse order.

more than sedentary lifting and carrying requirements, and that she would be absent from work over two days a month.  Plaintiff argues that the ALJ failed to provide good/specific/supported reasons for assigning very limited weight to Dr. Rocha's opinions as to Plaintiff's physical limitations.  Plaintiff asserts that the ALJ failed to address the § 404.1527 factors when weighing Dr. Rocha's opinions and considered the subject opinions in isolation from each other.  At the same time, Plaintiff asserts that the ALJ did not address each opinion individually as he should have, given that the opinions are premised on different impairments. Plaintiff further argues that the ALJ erred in his evaluation of Dr. Rocha's opinions with respect to Plaintiff's mental limitations.  Plaintiff explains that despite giving these opinions great weight, the ALJ failed to incorporate them into the RFC finding or explain why they were excluded therefrom.  According to Plaintiff, the ALJ gave great weight to Dr. Rocha's opinion that Plaintiff would be absent from work more than two days a month, but failed to incorporate this opinion in his findings without an explanation.

Defendant responds that the ALJ properly considered Dr. Rocha's opinions in assessing Plaintiff's RFC.  Defendant asserts that substantial evidence supports the ALJ's decision to give little weight to Dr. Rocha's opinions in regards to Plaintiff's physical impairments.  As to Dr. Rocha's opinions with respect to Plaintiff's mental impairments, Defendant argues that Plaintiff misreads the ALJ's decision and that the ALJ properly afforded great weight to Dr. Rocha's opinion

that Plaintiff's anxiety did not significantly interfere with her functioning.

## 1.    The ALJ's Decision

The ALJ determined that Plaintiff has the RFC to perform a reduced range

of light work as follows:

> [Plaintiff] needs to be able to perform her tasks in either the seated
> or standing position at her option; she needs to avoid ladders or
> unprotected heights; she needs to avoid the operation of heavy
> moving machinery; she is limited to occasional bending, crouching,
> kneeling and stooping; she needs to avoid squatting and crawling;
> she needs to avoid the push and pull of arm controls; she needs to
> avoid overhead reaching; she needs to avoid the operation of foot
> controls; and she needs simple tasks with low stress and no
> production line.

(Tr. 19-20.)

In making this determination, the ALJ considered, among others, the

opinions of Dr. Rocha.  He noted:

> Throughout 2013 and 2014, the claimant followed up with her
> primary care physician, Lily Rocha, MD, who prescribed a variety of
> medications for the claimant's impairments, provided referrals to
> specialists, and monitored blood work.  Dr. Rocha provided
> numerous disability opinions, but her treatment notes are
> handwritten and include minimal detail or explanation of findings;
> therefore, they are less useful than other records (*see e.g.*, Exhibit
> 29F).

(Tr. 21-22.)  The ALJ weighed Dr. Rocha's opinions as follows:

> The numerous and repetitive Medical Source Statements from
> treating primary care physician Lily Rocha, MD, are given limited
> weight because they indicate fairly extreme limitations that are
> largely unsupported by Dr. Rocha's treatment notes and which
> conflict with some of the opinions offered by specialists, including the
> claimant's orthopedist, regarding her ability to perform fine and gross

manipulation and overhead reaching.  For example, Dr. Rocha indicates that the claimant cannot perform manipulative motions with her hands on a sustained basis, which is contrary to the orthopedic surgeon's opinion, but Dr. Rocha states that the claimant can reach overhead 100% of the time, which is contradicted by the evidence and the claimant's statements regarding her left shoulder disorder (Exhibits 4F, 7F-9F, 12F, 14F, 20F and 23F-26F).  As such, these opinions were given very limited weight, and only to the extent that they were consistent with other medical evidence of record.

Conversely, Dr. Rocha's opinions regarding the claimant's anxiety, namely that it does not significantly interfere with her functioning and that it would not preclude an ability to perform simple tasks, are given great weight as they are consistent with the overall medical evidence of record and with the claimant's reported symptoms and conservative treatment (Exhibits 6F, 19F and 30F).

(Tr. 24.)

## 2.    Dr. Rocha's Opinions

On February 22, 2013, Dr. Rocha completed a Medical Source Statement Concerning the Nature and Severity of Plaintiff's Physical Impairment.  (Tr. 288-92.)  Dr. Rocha opined that in an eight-hour workday, Plaintiff could sit for up to two hours and stand/walk for up to two hours; she should not sit continuously; she could lift and carry 10 pounds occasionally and never 20 pounds; she had significant limitations in doing repetitive reaching, handling, fingering, or lifting; her condition interfered with the ability to keep her neck in a constant position; she could not do a full time competitive job requiring activity on a sustained basis; she should not push, pull, or bend; emotional factors contributed to the severity of her symptoms; she was incapable of low stress jobs; and she would be absent

from work two or three times per month as a result of her impairments. (Tr. 289-92.) Dr. Rocha's prognosis was poor. (Tr. 288.) As a basis for her conclusions, Dr. Rocha cited Plaintiff's pain, which caused severe discomfort and stress. (Tr. 291.) However, Dr. Rocha noted that she had been able to completely relieve Plaintiff's pain with medication without unacceptable side effects. (Tr. 288.)

On May 3, 2013, Dr. Rocha completed a Supplemental Mental Impairment Questionnaire, opining that Plaintiff did not suffer from a mental impairment that significantly interfered with daily functioning. (Tr. 300.) She noted that Plaintiff was on Xanax for anxiety. (Tr. 301.)

On May 27, 2013, Dr. Rocha completed a Treating Source Orthopedic Questionnaire for Plaintiff's neck disc disease. (Tr. 306.) She noted decreased grip strength, decreased ability to perform fine manipulation, chronic pain, and total body pain. (Tr. 307.) She rated Plaintiff's grip strength as 4/5 and her lower extremity strength as 4/5. (*Id.*) Dr. Rocha opined that Plaintiff was not capable of performing fine/gross manipulations on a sustained basis because repetitive activity was hampered by pain. (*Id.*)

On June 21, 2013, Dr. Rocha completed another Medical Source Statement Concerning the Nature and Severity of Plaintiff's Physical Impairment. (Tr. 475-77.) This time, Dr. Rocha noted that she had not been able to completely relieve Plaintiff's pain with medication without unacceptable side effects. (Tr. 475.) Dr. Rocha opined that in an eight-hour workday, Plaintiff could

sit for up to two hours and stand/walk for up to two hours; she could rarely lift and carry less than 10 pounds and never 10 pounds; she had significant limitations in doing repetitive reaching, handling, fingering, or lifting; her condition interfered with the ability to keep her neck in a constant position; she could not do a full time competitive job requiring activity on a sustained basis; she should not pull or bend and needed to avoid noise; emotional factors contributed to the severity of her symptoms and functional limitations; she was capable of low stress jobs; and she would be absent from work two or three times per month as a result of her impairments.  (Tr. 475-77.)  Dr. Rocha's prognosis was fair to poor.  (Tr. 475.)

On July 19, 2013, Dr. Rocha completed a Medical Opinion Regarding Ability to Do Physical Activities.  (Tr. 309-11.)  She opined that Plaintiff could walk two or three city blocks without rest; she could continuously sit for 20 minutes and stand for 30 minutes at one time; she could sit, stand or walk less than two hours in an eight-hour workday; she needed a job permitting shifting positions at will; and she would need to take four unscheduled breaks lasting 45 minutes to an hour.  (Tr. 309-10.)  She also opined that Plaintiff could safely lift and carry less than 10 pounds frequently, 10 pounds occasionally, and never 20 pounds.  (Tr. 310.)  She further opined that Plaintiff had significant limitations in doing repetitive reaching, handling, or fingering: she could use her hands and fingers 80% (right) and 90% (left) of the time, and she could use her arms for reaching (including overhead reaching) 100% of the time in an eight-hour workday, but she could not

do so continuously.  (*Id.*)  Dr. Rocha imposed additional limitations, including never twisting or climbing ladders and occasionally stooping, crouching, and climbing stairs.  (Tr. 311.)  Her prognosis was fair to poor.  (Tr. 309.)  She opined that Plaintiff would be absent from work more than twice a month.  (Tr. 311.)

On July 19, 2013, Dr. Rocha also completed a Medical Opinion Questionnaire - Physical Activities.  (Tr. 716-18.)  She opined that Plaintiff could walk two or three city blocks without rest; she could continuously sit for 20 minutes and stand for 30 minutes at one time; she could sit, stand or walk less than two hours in an eight-hour workday; she needed a job permitting shifting positions at will; and she would need to take four (including regular) breaks lasting 45 minutes to an hour.  (Tr. 716-17.)  She also opined that Plaintiff could safely lift and carry less than 10 pounds frequently, 10 pounds occasionally, and never 20 pounds.  (Tr. 717.)  She further opined that Plaintiff had significant limitations in doing repetitive reaching, handling, or fingering: she could use her hands and fingers 80% (right) and 90% (left) of the time, and she could use her arms for reaching (including overhead reaching) 100% of the time in an eight-hour workday, but she could not do so continuously.  (*Id.*)  Dr. Rocha imposed additional limitations, including never twisting or climbing ladders and occasionally stooping, crouching, and climbing stairs.  (Tr. 718.)  Her prognosis was fair to poor.  (Tr. 716.)  She opined that Plaintiff would be absent from work more than twice a month.  (Tr. 718.)

On July 19, 2013, Dr. Rocha also completed a Fibromyalgia Questionnaire. (Tr. 313-18.)  She answered the question "Does your patient meet the American Rheumatological criteria for fibromyalgia?," with "unknown."  (Tr. 313.)  She noted multiple tender points, chronic fatigue, morning stiffness, muscle weakness, subjective swelling, frequent, severe headaches, numbness and tingling, anxiety, panic attacks, and carpal tunnel syndrome.  (*Id.*)  She also noted that emotional factors contributed to the severity of Plaintiff's symptoms and functional limitations.  (Tr. 314.)  She opined that Plaintiff's experience of symptoms was often severe enough to interfere with attention and concentration.  (Tr. 315.)  She opined that Plaintiff could walk two or three city blocks without rest; she could continuously sit for 20 minutes and stand for 30 minutes at one time; she could sit, stand or walk less than two hours in an eight-hour workday; she needed a job permitting shifting positions at will; and she would need to take three or four unscheduled breaks lasting 45 minutes to an hour.  (Tr. 315-16.)  She also opined that Plaintiff could safely lift and carry less than 10 pounds frequently, 10 pounds occasionally, and never 20 pounds.  (Tr. 317.)  She further opined that Plaintiff had significant limitations in doing repetitive reaching, handling, or fingering: she could use her hands and fingers 80% (right) and 90% (left) of the time, and she could use her arms for reaching (including overhead reaching) 100% of the time in an eight-hour workday, but she could not do so continuously. (*Id.*)  Her prognosis was again fair to poor.  (Tr. 313.)  She opined that Plaintiff

would be absent from work more than twice a month.  (Tr. 318.)

On July 19, 2013, Dr. Rocha also completed a Medical Opinion Questionnaire (Mental Impairments).  (Tr. 874-76.)  She opined that Plaintiff had a fair ability to travel in unfamiliar places, to use public transportation, to perform at a consistent pace without an unreasonable number and length of rest periods, to accept instructions and respond appropriately to criticism from supervisors, to respond appropriately to changes in a routine work setting, and to deal with normal work stress, and she had poor or no ability to deal with the stress of semiskilled and skilled work.  (*Id.*)  Her prognosis was again fair to poor.  (Tr. 874.)  She opined that Plaintiff would be absent from work more than twice a month.  (Tr. 876.)

On September 16, 2013, Dr. Rocha completed a Treating Source Fibromyalgia Questionnaire.  (Tr. 629-30.)  She noted history of chronic pain, chronic fatigue, and positive tender points.  (Tr. 629.)  She rated Plaintiff's grip strength as 4/5 with decreased ability to perform both fine and gross manipulation and Plaintiff's lower extremity strength as 4/5.  (Tr. 630.)  She opined that Plaintiff required frequent periods of rest on a daily basis.  (*Id.*)

### 3.    Standard for Evaluating Opinion Evidence

The ALJ is required to consider all the evidence in the record when making a disability determination. *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinion evidence, "the ALJ must state with particularity the weight given

to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6). "However, the ALJ is not required to explicitly address each of those factors. Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. June 22, 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518

(11th Cir. 1984) (per curiam); 20 C.F.R. § 404.1527(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding."  *Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

### 4.    Analysis

The ALJ provided good reasons, supported by substantial evidence, for according limited weight to Dr. Rocha's opinions regarding Plaintiff's physical limitations.  For example, the ALJ properly observed that Dr. Rocha's assessed physical limitations are largely unsupported by her treatment notes, which are handwritten and include minimal detail or explanation of findings.  (*See, e.g.*, Tr. 422-29, 811-18.)  In addition, the ALJ properly observed that Dr. Rocha's assessed physical limitations are inconsistent with other parts of the record, including the opinions of Dr. Curtis, Plaintiff's orthopedist, regarding Plaintiff's ability to perform fine and gross manipulation and overhead reaching.

The physical examinations of Plaintiff's hands, fingers, and wrists by Dr. Curtis were normal, with some abnormalities noted with her elbows.  (*See* Tr.

619, 623, 659.)[4]  On September 20, 2013, Dr. Curtis completed a Treating

Source Orthopedic Questionnaire, where he noted Plaintiff had chronic pain,

decreased grip strength, radiculopathy, and weakness in her hands secondary to

chronic mild carpal tunnel syndrome.  (Tr. 631-32.)  He assessed Plaintiff's grip

strength as 4/5 and her lower extremity strength as 5/5.  (Tr. 632.)  Dr. Curtis

opined that Plaintiff was capable of performing fine/gross manipulations on a

sustained basis.  (*Id.*)

As the ALJ observed, Dr. Curtis's opinions were supported by the overall

evidence.  (*See* Tr. 321 ("[Patient] is [complaining of] neck pain radiating to

bilateral arms, she is completely stable on current medication with no side

effect."); Tr. 500 ("At the present time, I have explained to this patient that I don't

find any neurovascular deficit at the upper or lower extremities.  There is some on

the symptoms with the [range of motion] of the [left upper extremity].  I don't find

any mandatory indication for any procedure or any further study to be done at the

left shoulder. . . .  There is a definite chronic situation here in the spine secondary

---

[4] While there were more abnormal findings during Plaintiff's physical examinations at the Arthritis & Osteoporosis Treatment Center in 2014 and 2015, such as tenderness in both wrists, ankles, shoulders, knees, and all MTP joints of the left foot, painful range of motion in the shoulders, chronic synovial changes in the knees, metatarsalgia in the feet, synovitis of the joints of the upper and lower extremities (*see* Tr. 790-91, 795, 802, 855-56, 902, 995, 1000, 1004, 1008, 1011, 1015, 1018-19, 1022-23), Plaintiff received only conservative treatment (medications and some injections) at this Center and was advised to exercise, follow a diet, and take supplements (*see* Tr. 791, 795-96 (also noting that Plaintiff "is a therapeutic challenge due to severe [gastroesophageal reflux disease], erosions in esophagus . . . and intolerance to multiple medications"), 802, 805, 856-57, 902).

to the previous car accident. . . . PROGNOSIS: Good.  DISABILITY: Partial permanent, because of the injury at the cervical spine.  ACTIVITY: As much as the patient can tolerate it."); Tr. 778-79 ("Patient maintains full range of motion of the hand.  She does note some decrease in her grip strength over the last several years. . . . The patient maintains full extension and full flexion including full grip[.] . . . Because the patient is not too pleased with the results of her left carpal tunnel release which was performed at an outside facility 3 months ago, the patient is currently not interested in invasive treatment for her right hand carpal tunnel syndrome. . . . I have recommended the patient continue the use of nonsteroidal anti-inflammatory medication and I provided her with a cockup wrist brace."); Tr. 1002 ("She is able to perform activities of daily living with some difficulty in climbing stairs, walking and standing.").)

Dr. Curtis's opinions also seem consistent with the results of diagnostic tests.  As the ALJ observed, many of the imaging studies showed "only minimal or mild abnormalities, with some moderate abnormalities, but no severe abnormalities."  (Tr. 23.)  The record supports this observation.  (*See* Tr. 295 ("The [February 27, 2013] EMG/NCs was technically satisfactory and revealed no abnormalities."); Tr. 334 (noting that the July 7, 2012 MRI of the left shoulder showed "mild, chronic hypertrophic changes and impingement at the acromioclavicular joint with moderate tendinopathy"); Tr. 625-28 (noting the August 7, 2013 Electromyography of the upper extremities was normal and the

August 5, 2013 Nerve Conduction Studies suggested mild bilateral carpal tunnel syndrome, right side slightly more prominent); Tr. 1027-28 (noting the March 11, 2014 X-ray report showed, *inter alia*, normal hands other than possible mild degenerative disease affecting the PIP joints; mild degenerative changes in the DIP joints of the feet; symmetrical narrowing of joint space suggestive of inflammatory arthritis with superimposed moderate degenerative disease affecting both knee joints; loss of normal cervical curvature, disk degeneration affecting C5-C6, C6-C7, C7-T1, and T3, mild degenerative changes in the facet joints, and encroachment of neuroforaminal at C5-C6 on the right and C6-C7 on the left; generalized osteopenia and some degeneration of facet joints at L4-L5 and S1); Tr. 1029 (noting the July 22, 2014 MRI of the right wrist showed: "Small to moderate sized erosion at the proximal hamate. Small erosion at the radial aspect of the third metacarpal head. Mild synovitis. . . . No significant tenosynovitis. . . . Findings may be a manifestation of an inflammatory arthropathy such as rheumatoid arthritis.").)

Based on the foregoing, the Court finds that the ALJ's reasons for giving limited weight to Dr. Rocha's opinions regarding Plaintiff's physical impairments are supported by substantial evidence. To the extent Plaintiff invites the Court to re-weigh the evidence or substitute its decision for that of the ALJ, the Court cannot do so. As long as the ALJ's findings are based on correct legal standards and are supported by substantial evidence, the Commissioner's decision must be

affirmed even if the reviewer would have reached a different conclusion.

Further, as Defendant points out, Plaintiff seems to misread the ALJ's decision with respect to Dr. Rocha's opinions regarding Plaintiff's mental impairments. According to Plaintiff, the ALJ gave great weight to Dr. Rocha's opinion that Plaintiff would be absent from work more than two days a month, but failed to incorporate this opinion in his findings without an explanation. In reality, the ALJ gave great weight to Dr. Rocha's opinion that Plaintiff's anxiety did not significantly interfere with her functioning and would not preclude an ability to perform simple tasks, because it was consistent with the overall medical evidence, Plaintiff's symptoms, and her conservative treatment. (Tr. 24.) Contrary to Plaintiff's argument, the ALJ did not give great weight to Dr. Rocha's opinion that she would be absent from work for two days a month. Therefore, Plaintiff's argument with respect to Dr. Rocha's mental opinions is also rejected.

## B.    The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff's second argument on appeal is that the ALJ erred in relying on the testimony of the Vocational Expert ("VE"), which was inconsistent with information in the Dictionary of Occupational Titles ("DOT"), without obtaining an explanation for the inconsistency, in accordance with SSR 00-4p.[5]  Plaintiff states that despite

---

[5]  Pursuant to SSR 00-4p: "When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a

(continued...)

the ALJ's limitation in the RFC and the hypothetical question that Plaintiff needs to avoid overhead reaching, all three jobs identified by the VE—ticket taker, photocopy machine operator, and office helper—require frequent reaching. Plaintiff argues that even if the reality of these positions is that they require less than frequent overhead reaching, the ALJ was required at the very least to obtain a reasonable explanation for the conflict between the DOT and the VE's testimony.

Defendant responds that there was no apparent inconsistency and points out that Plaintiff's attorney did not question the VE about any inconsistency or raise the issue during the hearing. Defendant asserts that SSR 00-4p does not require an ALJ to independently investigate a VE's testimony or further interrogate a VE when the VE testifies that no inconsistency or conflict exists between the VE's testimony and the DOT. Defendant adds that even if there was a conflict between the DOT and the jobs identified by the VE in response to the hypothetical question, the VE's testimony outweighs the DOT because the DOT is not the sole source of admissible information regarding jobs. The Court agrees with Defendant.

At the hearing, the following exchange took place between the ALJ and the VE:

---

[5](...continued)
determination or decision about whether the claimant is disabled."

| Q | And is your testimony consistent with the DOT? |
| A | Yes it is. |
| Q | I don't see references to the time and attendance of the sit/stand. How is it you're able to testify regarding those elements? |
| A | That's based upon my professional experience which includes labor market surveys and also there are published surveys of employers which relate to both the sit/stand option and off task behavior and absenteeism -- |
| Q | Thank you. |
| A | -- that I've reviewed. |

(Tr. 81.) In his decision, the ALJ determined, pursuant to SSR 00-4p, that the VE's testimony was consistent with the information contained in the DOT; to the extent the testimony provided was outside of the DOT, it was based on the VE's professional experience, including job analyses, and the ALJ accepted it as competent and credible. (Tr. 26.)

At the hearing, Plaintiff's counsel did not object to this testimony or question the VE about any inconsistency concerning Plaintiff's overhead reaching limitation. As such, there was no apparent inconsistency for the ALJ to resolve. *See Chambers v. Comm'r of Soc. Sec.*, No. 16-11971, 662 F. App'x 869, 873 (11th Cir. Dec. 1, 2016) (per curiam) ("[T]here was no apparent inconsistency—indeed, [plaintiff] did not question the vocational expert about any inconsistency or raise the issue before the ALJ, and the vocational expert affirmed that his testimony was consistent with the DOT."); *Gray v. Colvin*, No. 3:12cv506/EMT, 2014 WL 1118105, *9 (N.D. Fla. Mar. 20, 2014) (finding "there was no apparent conflict for the ALJ to resolve and thus no error" where plaintiff's

counsel raised no challenge or objection to the VE's statement that his testimony was consistent with the DOT); *Terwilliger v. Colvin*, 2013 WL 2251563, *13 (N.D. Fla. May 21, 2013) ("In this case, neither the VE nor the Plaintiff made the ALJ aware of any potential conflict between the VE's testimony and the DOT. Even assuming a conflict existed, however, the ALJ was entitled to rely upon the VE's testimony.").

Despite the fact that the ALJ was not made aware of any apparent conflict other than the sit/stand option which was brought up at the hearing, Plaintiff now suggests that when there is a conflict between the VE's testimony and the DOT, the ALJ must obtain an explanation for the conflict before relying on the VE's testimony. However, in the Eleventh Circuit, the ALJ is not required to do so, in light of *Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999). *See Jones v. Comm'r of Soc. Sec.*, 423 F. App'x 936, 939 n.4 (11th Cir. Apr. 19, 2011) (per curiam) ("To the extent SSR 00-4p conflicts with [*Jones v. Apfel*, 190 F.3d 1224 (11th Cir. 1999)], we are bound by *Jones.*"); *see also Terwilliger*, 2013 WL 2251563 at *12 ("Although SSR 00-4p was promulgated after *Jones* was decided, it does not undo the *Jones* rule.").

In *Jones*, the Eleventh Circuit held that when there is a conflict between the VE's testimony and the DOT, "the VE's testimony 'trumps' the DOT . . . because the DOT 'is not the sole source of admissible information concerning jobs." 190 F.3d at 1229-30. The court explained:

The DOT itself states that it is not comprehensive.  It provides occupational information on jobs in the national economy, and it instructs "DOT users demanding specific job requirements [to] supplement th[e] data with local information detailing jobs within their community." . . . Additionally, the Code of Federal Regulations states that the SSA will take administrative notice of reliable job information available from various governmental and other publications, such as the DOT.  *See* 20 C.F.R. § 404.1566(d)(1).  By this wording, the SSA itself does not consider the DOT dispositive.  As noted in the DOT, the ALJ should supplement the DOT data with local information detailing jobs in the regional community.  The VE provides this vital information. . . .  As such, we conclude that the VE's testimony is crucial to an ALJ's determination at step 5 of the sequential evaluation process.  Due to the significance of the VE's testimony, we . . . hold that an ALJ may rely solely on the VE's testimony.

*Id.* at 1230.

Therefore, to the extent there was a conflict between the VE's testimony and the DOT in this case, albeit one of which the ALJ was unaware, the ALJ did nor err in relying on the VE's testimony.  *See Chambers*, 662 F. App'x at 873 ("[E]ven if there was a conflict between the DOT and the jobs identified by the vocational expert in response to the hypothetical question, the testimony of the vocational expert outweighs the DOT because the DOT is not the sole source of admissible information concerning jobs.").  "[T]he VE is an expert on the kinds of jobs a person can perform, while the DOT simply provides generalized overviews of jobs and not the specific requirements of a job."  *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. Apr. 25, 2011) (per curiam); *see also Jones*, 423 F. App'x at 939 ("The DOT provides descriptions of occupations, not of the numerous jobs within those occupations, and the VE 'may be able to

provide more specific information about jobs or occupations than the DOT.'").[6]

Therefore, Plaintiff's second argument is also rejected.

Accordingly, it is **ORDERED**:

1.      The Commissioner's decision is **AFFIRMED**.

2.      The Clerk of Court is directed to enter judgment consistent with this

Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on February 14, 2018.

_MONTE C. RICHARDSON_
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

---

[6] Plaintiff states that "[a]t no point did the vocational expert declare that he was relying upon any other authority or vocational resource to support his opinions, *except* when discussing the basis for her testimony regarding how a 'sit stand option' affects a person's ability to work." (Doc. 22 at 3.)  However, as noted earlier, Plaintiff's counsel did not question the VE concerning Plaintiff's overhead reaching limitation or the reasoning behind the VE's testimony.  "When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion, even if that conclusion differs from the [DOT]."  *Terwilliger*, 2013 WL 2251563 at *12 n.36 (internal citations and quotation marks omitted).